[No. G037428. Fourth Dist., Div. Three. July 26, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL LEE FRITZ, Defendant and Appellant.

## COUNSEL

Warren P. Robinson, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela Ratner Sobeck and Raymond M. DiGuiseppe, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEDSWORTH, J.**—Michael Lee Fritz was convicted of charges stemming from two separate incidents of alleged shoplifting from a Kohl's department store. Specifically, Fritz was found guilty of one count of conspiracy to commit second degree burglary (Pen. Code, § 182, subd. (a)(1)); one count of second degree burglary (Pen. Code, §§ 459–460, subd. (b)); and two counts of petty theft with a prior conviction (Pen. Code, §§ 666, 484, subd. (a), and 488). Fritz contends the judgment must be reversed because although his trial had been bifurcated—with the issue of his priors to be tried to the court, sitting without a jury—the court nonetheless erroneously allowed the prosecutor to introduce evidence before the jury establishing that Fritz had engaged in a prior incident of shoplifting.

We agree the court erred in admitting the evidence establishing Fritz's prior shoplifting crime. Fritz did not testify at trial, and thus never placed his credibility in issue. Moreover, the evidence was not admissible to impeach Fritz's out-of-court statement to police that he had never previously been involved in shoplifting, because it was the prosecution who offered that statement into evidence, and the statement had no relevance except as something to impeach.

But even if we were to assume the statement, taken together with the evidence establishing its falsity, were somehow admissible as indicating Fritz's "consciousness of guilt" about the crimes at issue in this case, we would nonetheless conclude it was an abuse of discretion to admit the evidence. Given the fact that Fritz's false out-of-court statement related to a collateral matter (his involvement in prior shoplifting), rather than his complicity in the incidents at issue in his trial, its probative effect was not compelling. And when the slight probative effect of the statement is balanced against the highly prejudicial effect of establishing its falsity—through evidence demonstrating he had committed the same type of crime in the past—it is clear the latter substantially outweighed the former.

Finally, in light of the painfully thin case otherwise presented against Fritz, we conclude the court's error in admitting the evidence was prejudicial to the outcome of the case, and we consequently reverse the judgment.

The evidence introduced against Fritz related to three distinct incidents. The first, occurring on the evening of July 14, 2005, consisted of the following: Daniel Bright, a loss prevention supervisor for Kohl's department store, was monitoring the in-store cameras from his office. He spotted Fritz heading toward the store exit. Just before Fritz reached the door, he turned and went into a nearby department. He walked along the wall while looking back toward the registers before returning to the exit and departing the store. Bright did not see Fritz take anything; nor did the alarm which detects sensors attached to merchandise go off as Fritz passed through the doors. Nonetheless, Bright considered Fritz to be engaging in "counter-surveillance" behavior, and continued to watch him outside the store through external cameras.

Fritz ran to his car in the parking lot, but did not leave immediately. Instead, Bright observed Fritz in his car, apparently removing his pants. Fritz then got out of the car and put his shoes on. He was wearing one pair of jeans and holding another in his hands. He periodically looked back toward the store. He then got back into his car and left the parking lot. Bright did not know whether either of the two pairs of jeans in Fritz's possession was Kohl's merchandise, and he concluded that under Kohl's store policy, there was no basis to detain Fritz.

The next incident occurred on July 23, 2005. This time, Bright spotted Fritz outside the store. Fritz was in the same car he had used on July 14, parked in a marked spot. His car was facing the store's entrance doors, and he occasionally looked at them. While Bright was watching Fritz, the store's sensor alarms went off. Bright immediately looked to the screen showing the front of the store, and saw a woman leaving the store with two large bags. Neither bag was from Kohl's. Bright had no knowledge of the woman's activities within the store, nor whether her bags contained Kohl's merchandise. She showed no reaction to the alarm, and another person may have been leaving the store just behind her. After the woman exited, Fritz drove his car to the curb and picked her up. The two drove away at a fairly slow speed. After about 100 yards, while still in the parking lot, Fritz stopped the car and the woman got out, placed her bags in the trunk, and retrieved what appeared to be a purse. When she got back in the car, Fritz drove out of the lot. Again, Bright concluded he had not seen enough to justify an arrest.

The third incident occurred on September 8, 2005. Bright again observed Fritz parked in the parking lot. Inside, Bright spotted the same woman who had driven away with Fritz on July 23. She was carrying a large, empty "See's Candy" bag, plus another bag that Bright recognized from the July 23 incident. She entered a dressing room with some items, and when she left, one of the items was in the See's Candy bag. She then continued to shop, and later purchased some men's clothing and jewelry. She then left the store without paying for the item in the See's Candy bag. By the time she left, the woman had been in the store for at least an hour. During that hour, Fritz remained in the car, occasionally glancing toward the store.

After the woman left the store, she was detained. Some items of women's clothing, later determined to be stolen, were found in her possession. There were no sensor tags on the items, although Bright explained that it was possible for a shoplifter to locate and remove the tags. Police were dispatched to Kohl's and they detained Fritz, who made no attempt to flee the scene.

Fritz was transported to the police station, and after being advised of his *Miranda* rights, he agreed to speak with a police officer. When the officer asked if Fritz had been aware that his girlfriend was stealing clothing while inside Kohl's, Fritz stated he was not. He then volunteered the additional information that he had never stolen anything from a store in the past.

Fritz was charged in connection with each of the three incidents. The court bifurcated the trial on the issue of Fritz's priors, and he subsequently stipulated to two prior convictions. In light of Fritz's stipulation, the parties agreed that the court would not read the allegations concerning Fritz's priors to the jury.

Nonetheless, the prosecutor moved to place evidence of those priors before the jury, arguing they were admissible under Evidence Code section 1101, subdivision (b),[1] to show intent, knowledge regarding the conspiracy charge, and "common scheme or plan." The prosecution also argued the priors were admissible to impeach Fritz's postarrest statement denying he had ever engaged in shoplifting. The court rejected the first argument, concluding that the priors were not similar enough to the current charges to qualify for admission under section 1101, subdivision (b).

However, after doing some research, the court announced it had found a case, *People v. Jacobs* (2000) 78 Cal.App.4th 1444 [93 Cal.Rptr.2d 783], which it believed was "directly on point" and allowed Fritz's statement to be admitted under section 1202, and then impeached with the evidence of his

---

[1] All further statutory references are to the Evidence Code.

priors. After further consideration and argument by Fritz's counsel, the court acknowledged that *Jacobs* did not directly authorize the admission of the original statement, and requested the parties to brief the issue. The prosecutor filed a brief arguing that Fritz's statement was admissible—along with the evidence of his priors, which proved the statement's falsity—as evidence of his "consciousness of guilt." The prosecutor contended that with a proper limiting instruction, the evidence would not be unduly prejudicial.

The court was persuaded by the prosecutor's argument, and concluded the statement, when demonstrated to be false, was admissible as evidence of Fritz's consciousness of guilt. The court then determined the evidence's probative effect was not substantially outweighed by the prejudicial impact of the evidence Fritz had a prior record, and was thus not precluded by section 352. The court did attempt to restrict the *amount* of prejudicial information given to the jury, by allowing into evidence only one of Fritz's two priors. Specifically, the court ruled that the prosecutor could introduce a written statement, signed by Fritz, in which he acknowledged having stolen merchandise from a Radio Shack in November of 2004.[2]

At the conclusion of the evidence, the court dismissed the charges relating to the July 23, 2005 incident alleged against Fritz (the second incident), in which he had merely waited for his girlfriend in the car, but neither of them had been seen stealing merchandise and neither was detained.

In closing argument, the prosecutor made several references to Fritz's false statement, including specific references to his prior crime. And while Fritz argues this amounted to "harp[ing]" on it, the prosecution counters by asserting the evidence was mentioned "only a few times."

I

As the first step in our analysis, we note that Fritz did not testify at trial, nor did he offer into evidence his out-of-court statement denying to the police that he had ever engaged in shoplifting. Had he done the former, the prosecutor would have been entitled to offer evidence impeaching his credibility (§§ 780, 785), and had he done the latter, the prosecutor could have offered evidence both to impeach his credibility generally as well as the content of the statement specifically. (§§ 780, 1202.)

---

[2] This appears to have been an attempt to soften the impact of the prior conviction by using something other than official court records.

■ That is essentially the analysis employed in *People v. Jacobs, supra,* 78 Cal.App.4th 1444, the case initially relied upon by the court below. In *Jacobs,* the court held "that a defendant's prior *felony* convictions are admissible under . . . sections 1202 and 788 *to attack his credibility* when, *at his own request,* his exculpatory statement to the police is admitted into evidence, but he does not testify at trial." (*Id.* at p. 1446, italics added.) The court reasoned that because the defendant himself had offered his out-of-court statement into evidence, section 1202 entitled the prosecution to treat it—and impeach it—just as though the defendant had testified to it on the stand.[3] In other words, the defendant himself placed his credibility in issue by offering the statement into evidence, and would be treated in the same manner as if he had taken the stand and uttered the same thing. And because the defendant's prior convictions were felonies, section 788 made them *specifically admissible to impeach his credibility.*

This case, of course, is entirely different, and the trial court appears to have realized that when he asked for briefing. Here, Fritz did not testify, and it was the prosecutor, rather than Fritz, who sought to introduce into evidence his out-of-court statement denying any prior shoplifting. Thus, Fritz did nothing to place his credibility at issue.

■ Moreover, because it was the prosecutor, rather than Fritz, who offered the statement into evidence in this case, the prosecutor had no right to impeach it. As explained in *People v. Mayfield* (1997) 14 Cal.4th 668, 748 [60 Cal.Rptr.2d 1, 928 P.2d 485], a party cannot "elicit otherwise irrelevant testimony on cross-examination merely for the purpose of contradicting it." (Citing *People v. Lavergne* (1971) 4 Cal.3d 735, 744 [94 Cal.Rptr. 405, 484 P.2d 77].) And in this case, Fritz's out-of-court statement denying any history of petty thefts, was irrelevant, as the court had already ruled the evidence of his priors was inadmissible under section 1101.[4] The statement, then, was "relevant" *only* to the prosecutor's plan to impeach it, using the very same evidence of Fritz's priors the court had already deemed inadmissible. Under *People v. Mayfield, supra,* 14 Cal.4th, 668, that was bootstrapping, and improper.

---

[3] Section 1202 provides: "Evidence of a statement or other conduct by a declarant that is inconsistent with a statement by such declarant received in evidence as hearsay evidence is not inadmissible for the purpose of attacking the credibility of the declarant though he is not given and has not had an opportunity to explain or to deny such inconsistent statement or other conduct. Any other evidence offered to attack or support the credibility of the declarant is admissible if it would have been admissible had the declarant been a witness at the hearing. For the purposes of this section, the deponent of a deposition taken in the action in which it is offered shall be deemed to be a hearsay declarant."

[4] By contrast, the felony priors in *Jacobs* were made expressly admissible by statute.

Because *Jacobs* addressed only the situation in which the defendant himself had sought the admission of his out-of-court statement into evidence, and could thus be treated—which is to say, impeached—as though he had testified at trial, it provides no authority for the admission of Fritz's prior in this case. While sound, its reasoning is unavailing here.

## II

Of course, the prosecution does not admit it was simply doing an "end-run" around the court's ruling that Fritz's shoplifting priors were themselves inadmissible under section 1101. Instead, repeating the argument it ultimately settled on in the trial court, the prosecution contends it was Fritz's *decision to lie* about his criminal history which was admissible—as evidence of his "consciousness of guilt" about the charges at issue—and that establishing his history of shoplifting was merely a necessary aspect of proving the lie.[5]

We are not persuaded. First, we note that the cases allowing "consciousness of guilt" evidence have done so only in circumstances where the defendant's lie related directly to the crime charged—for example, a false alibi, a questionable story about how defendant came to innocently possess stolen goods, or a denial of any relationship to the victim.

■ Way back in *People v. Cole* (1903) 141 Cal. 88, 90 [74 P. 547], our Supreme Court explained the rule this way: "Deception, falsehood, and fabrication *as to the facts of the case* are treated as tending to show consciousness of guilt, and are admissible on the same theory as flight and concealment of the person when charged with crime." (Italics added.) In *People v. Wayne* (1953) 41 Cal.2d 814, 823 [264 P.2d 547], disapproved on other grounds in *People v. Snyder* (1958) 50 Cal.2d 190 [324 P.2d 1], the court reiterated that limited concept: " 'Where *a material fact* is established by evidence and it is shown that a defendant's testimony as to that fact was wilfully untrue, this circumstance not only furnishes a ground for disbelieving other testimony of this defendant [citations], but also tends to show consciousness of guilt . . . .' " (Quoting *Zarrillo v. Stone* (1945) 317 Mass. 510, 512 [58 N.E.2d 848], italics added.) Finally, in *People v. Kimble* (1988) 44

---

[5] The prosecution also urges that Fritz has conceded that "a defendant's false statements to police at the time of arrest are relevant and admissible to show consciousness of guilt." But Fritz has actually conceded nothing. He merely acknowledges the existence of a "consciousness of guilt" rule, while arguing—correctly—that it applies rather more narrowly than the prosecutor suggests, and specifically asserting that the statement introduced against him in this case does not fall within its scope. That is not a concession.

Cal.3d 480, 496 [244 Cal.Rptr. 148, 749 P.2d 803], the court characterized the rule as applying to " '[f]alse statements deliberately made by defendants to arresting officers concerning matters within [defendants'] own knowledge, and *relating to the issue of guilt or innocence* . . . .' " (Quoting Witkin, Cal. Evidence (2d ed. 1966) § 512, p. 482, and cases cited.)

■ The Supreme Court went on to explain in *Kimble* that "[o]f course, if the prior statement is of such a nature that, even if false, it would not reasonably demonstrate defendant's consciousness of guilt, the statement would not be admissible on this ground . . ." (*People v. Kimble, supra,* 44 Cal.3d at p. 496, fn. 11), and cites the concurring opinion of then Justice Traynor in *People v. Albertson* (1944) 23 Cal.2d 550, 582 [145 P.2d 7]. In that concurring opinion, Justice Traynor explains "It has never been suggested, however, that every falsehood voiced by the defendant between the time of the crime and the trial can be admitted on this basis, for it is well known that all persons are liable to make errors in the description of past events. Consciousness of guilt is proved, not by evidence of such slips, but *by fabrications which, like devious alibis, are apparently motivated by fear of detection, or which, like devious explanations of the possession of stolen goods, suggest that there is no honest explanation for incriminating circumstances* and thus *are admissions of guilt.*" (*Ibid.,* italics added.) Justice Traynor goes on to caution that "[b]efore evidence of false statements by a defendant may be received, the court must determine whether the falsehood is one *that may be reasonably construed as implying such an admission*; otherwise evidence might be received *that is in no way relevant to the issues and therefore seriously prejudicial to the defendant because it indicates to the jury that he is a dishonest person.*" (*Ibid.,* italics added.) In other words, the bare fact the defendant has been caught lying to police is sometimes too prejudicial to be revealed to the jury, because juries are inclined to equate dishonesty with criminality. Unless the lie implies an admission of guilt or is otherwise relevant in ascertaining the defendant's involvement in the crime at issue, it should be excluded.

In this case, Fritz's false statement was not intended as a way to avoid detection (as in the case of a devious alibi) because his presence during the incidents at issue was undisputed; nor was it an attempt to explain away incriminating circumstances. Instead, Fritz's statement was apparently intended to mislead the police as to an issue which was, in the words of Justice Traynor, "in no way relevant to the issues"; i.e., his *disposition* to commit the crime. (See § 1101, subd. (b).) Moreover, not only was the evidence of that lie (again in the words of Justice Traynor) "seriously prejudicial to the

defendant because it indicates to the jury that he is a dishonest person," it was particularly prejudicial in this case because it also revealed the forbidden "disposition" evidence—something the jury was otherwise prohibited from hearing.

▉ Although some cases have characterized the "consciousness of guilt" rule more generally, as applicable to situations where "a suspect makes false statements for the purpose of misleading or warding off suspicion" (see, e.g., *People v. Carrillo* (1995) 37 Cal.App.4th 1662, 1669 [45 Cal.Rptr.2d 16])—and thus seem to imply that *any* false statement made to police in order to dissuade them from suspecting someone might qualify[6]—a more complete statement of that rule can be traced back to *People v. Turner* (1948) 86 Cal.App.2d 791, 801 [195 P.2d 809], in which the court said: "any false or misleading statements [the defendant] may make to the arresting officers or others *with relation to material facts*, for the purpose of misleading, or warding off suspicion . . . is receivable in evidence as indicating a consciousness of guilt . . . ." (Italics added.)

We think the latter statement reflects the better rule. Obviously any person arrested for a crime, whether guilty or innocent, would harbor a fervent desire to look good to the police and might lie about any number of wholly irrelevant things.[7] And a rule which equates *any lie* told in the context of such an attempt with being guilty of the crime, necessarily assumes that only criminals would lie to the police—the very same "seriously prejudicial" assumption decried by Justice Traynor.

As Justice Traynor recognized, a lie about the facts of the crime is usually offered because the truth is damning. Over time, our courts have concluded that an innocent person has no reason to lie about the facts of the crime because the truth will establish his or her innocence. We have therefore concluded a lie about the facts of the crime evidences consciousness of guilt so we allow it into evidence.

By contrast, a lie about one's past record may be offered by either a guilty or an innocent suspect. It indicates not that the truth about the instant case is damaging—it says absolutely nothing about the instant case—but only that

---

[6] *Carrillo* was a case in which the defendant had falsely denied ownership of the car in which was found the large quantity of cocaine he was eventually charged with possessing. This is so clearly a falsehood evidencing consciousness of guilt, so clearly related to the facts of the case, that there was no reason for the court to use anything but the shorthand reference to the rule which we have quoted above.

[7] "I love you guys; I always buy tickets to the Policeman's Ball." "My brother's a cop." "I don't mind being detained because I support everything our police do; they don't pay you enough."

the suspect fears the police will rush to judgment. That is indicative not of guilt, but of timorousness and distrust—both of which are regrettable, but not criminally punishable.

And in fact, those cases which might seem to characterize the rule more broadly involve situations like *People v. Carillo, supra,* 37 Cal.App.4th 1662, in which the defendant's false statement clearly related directly to the crime at issue. (See *People v. Amaya* (1941) 44 Cal.App.2d 656 [112 P.2d 942] [defendant, accused of killing a man, falsely claimed to have found the man in bed with his wife]; *People v. Gibson* (1944) 64 Cal.App.2d 537 [149 P.2d 25] [defendant, accused of unlawful possession of prescription drugs, falsely claimed to be a medical school graduate entitled to use them]; *People v. Zack* (1986) 184 Cal.App.3d 409 [229 Cal.Rptr. 317] [defendant, accused of murder, falsely claimed to have been fishing in Carmel at the time of the crime]). Under such circumstances a full explication of the rule was not necessary to the court's analysis.

■ In light of all the foregoing, we conclude the false out-of-court statement made by Fritz in this case—concerning as it did, his prior crimes, rather than the ones at issue—could not be fairly characterized as evidencing his "consciousness of guilt" about the latter.[8]

### III

However, even if the statement made by Fritz in this case were one evidencing "consciousness of guilt," the outcome of this appeal would not change. Because even if we assume that *any lie* told by a defendant to police in the wake of his arrest—whether or not directly related to the crime at issue—can be introduced as reflecting some "consciousness of guilt," we would nonetheless have to conclude the court abused its discretion in

---

[8] To be clear, we would have no trouble concluding that Fritz's false statement evidenced his consciousness of guilt if, for example, in connection with the September 8, 2005 incident, Fritz had volunteered to the officer that he was sitting in his car in the Kohl's parking lot, waiting for his girlfriend while she shopped, not because he wished to distance himself from the crime he knew she was committing inside the store, but because he was listening to his favorite sports program on the radio. In such a case, it would be appropriate for the prosecution to introduce the statement, along with evidence that the program was not airing at the relevant time. If, in connection with the July 14, 2005 incident, Fritz had falsely explained to the police that he was changing his pants in the Kohl's parking lot only because he had to go directly to work from the store, that evidence could be properly admitted along with evidence establishing that in fact Fritz had not worked on the date in question. These statements would relate to the facts of the crime, not to the content of Fritz's character.

determining that the rather slight probative effect of the lie in this case was not substantially outweighed by the prejudicial effect of proving it. (§ 352.)[9]

Although the prosecution makes several arguments as to why the evidence was highly probative and not unduly prejudicial, we find none of them persuasive. First, the prosecution argues that the prior conviction was highly probative, "because it proved his post-arrest statement was false and thus showed a consciousness of guilt." But the attenuated wording of the assertion reveals its flaw. The proper focus is not on whether the prior conviction was highly probative of the falsity of Fritz's statement, but whether the false statement itself was highly probative of Fritz's *consciousness of guilt*. After all, consciousness of guilt was the actual issue the prosecutor sought to prove with this evidence.

And when analyzed properly, we conclude Fritz's statement was not highly probative. As we have said, while lying about the specific crime at issue may evidence a defendant's "consciousness of guilt" *about that crime,* lying about the existence of a prior conviction would seemingly evidence consciousness of guilt *about that prior conviction*—or perhaps merely consciousness of its prejudicial effect. As we have already suggested, anyone accused of shoplifting—whether guilty or not—would understandably hope to hide the fact that he or she had been previously convicted of the same crime. And while not everyone would affirmatively lie to the police about it, we are fairly confident no one would volunteer the truth either. It's just too damaging a piece of information, regardless of present culpability. So the fact Fritz lied about this is simply not particularly probative.

By contrast, the prior conviction carries immense prejudicial weight. The prosecution argues the evidence of Fritz's prior conviction cannot be viewed as unduly prejudicial, for two reasons. First, the prosecution argues that because the court allowed to jury to hear about only one of Fritz's shoplifting priors, rather than both, the impact of the evidence was not as prejudicial *as it could have been.* That is not the test. The prejudicial impact of proffered evidence is not determined by comparing it to the specter of some theoretically worse evidence the court may also have been asked to admit. Instead, its prejudicial effect is determined by evaluating the likely impact of its admission—as compared to not admitting it.

Thus, the valid comparison in this case is between the jury knowing that Fritz had been caught shoplifting in the past, *and the jury not knowing it.* And

---

[9] Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

knowing it is huge. As explained in *People v. Alcala* (1984) 36 Cal.3d 604, 631 [205 Cal.Rptr. 775, 685 P.2d 1126] (abrogated by statute as applied to sex offense cases), evidence that the defendant has engaged in prior similar crimes " 'is [deemed] objectionable, not because it has no appreciable probative value, *but because it has too much.*' (Italics added.) Inevitably, it tempts 'the tribunal . . . to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge.' " (Quoting 1 Wigmore, Evidence (3d ed. 1940) § 194, pp. 646–647.) That is why the trial court in this case bifurcated the proof of the priors from the rest of the case.

The prosecution also suggests the evidence of Fritz's prior shoplifting crime was not particularly prejudicial because the jury was instructed to consider it for only the limited purpose of ascertaining "consciousness of guilt." Again, we can't agree. First, as we have already pointed out, we are not persuaded that the evidence of Fritz's statement—relating as it did to a collateral matter—was properly construed as evidencing his "consciousness of guilt." As a consequence, the court's instruction expressly directing the jury that it might consider the statement for that purpose may have exacerbated, rather than ameliorated, the prejudicial effect of allowing the jury to know about it in the first place: It encouraged the jury to adopt a fallacious line of reasoning.

■ Moreover, as Fritz points out, when evidence is this prejudicial, we can hardly expect the jury to be entirely successful in compartmentalizing its thinking. "It is the essence of sophistry and lack of realism to think that an instruction or admonition to a jury to limit its consideration of highly prejudicial evidence to its limited relevant purpose can have any realistic effect. It is time that we face the realism of jury trials and recognize that jurors are mere mortals." (*People v. Gibson* (1976) 56 Cal.App.3d 119, 130 [128 Cal.Rptr. 302].) In other words, while we do presume the jury has endeavored to follow the court's instructions (*People v. Cunningham* (2001) 25 Cal.4th 926 [108 Cal.Rptr.2d 291, 25 P.3d 519]), we cannot always assume that those instructions are sufficient to dispel the taint of prejudicial information. A limiting instruction warning jurors they should not think about the elephant in the room is not the same thing as having no elephant in the room.

While it is true that " 'section 352 gives the trial court broad discretion when weighing the probative value and prejudicial effect of proffered evidence' " (*People v. Gurule* (2002) 28 Cal.4th 557, 654 [123 Cal.Rptr.2d 345, 51 P.3d 224], quoting *People v. Champion* (1995) 9 Cal.4th 879, 913 [39 Cal.Rptr.2d 547, 891 P.2d 93]), and that exercise of discretion "will not be

disturbed on appeal unless the prejudicial effect of evidence so admitted clearly outweighed its probative value" (*People v. Anderson* (2001) 25 Cal.4th 543, 591 [106 Cal.Rptr.2d 575, 22 P.3d 347]), we have no choice but to do so in this case. Because the probative value of Fritz's false statement to police was nugatory, and the prejudicial effect of the evidence need to prove its falsity was so serious, we conclude the court clearly erred in allowing the evidence to go before the jury.

## IV

And finally, we turn to the issue of whether the court's error had a prejudicial impact on the outcome of this case. We evaluate that issue by considering whether " 'after an examination of the entire cause, including the evidence' . . . it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see also *People v. Bolden* (2002) 29 Cal.4th 515, 544 [127 Cal.Rptr.2d 802, 58 P.3d 931].)

The prosecution's case here was wire-thin. The evidence against Fritz[10] was that in mid-July he walked through the store and left without buying anything and without setting off any merchandise alarms. Then he changed his pants in his car. It could not be determined that either pair of pants had ever come from Kohl's.

Ten days later, he was sitting in his car in the store parking lot when his girlfriend left the store carrying two large bags. This time, merchandize alarms went off, but they established nothing because another customer left at the same time. Store security *made no attempt to detain her*, and she and Fritz drove away.

*Two months later*, the girlfriend shoplifted while Fritz sat in his car in the parking lot.

That's it. Other than his history of shoplifting, that's the whole case against Fritz. He was never caught with any merchandise stolen from Kohl's and was never observed stealing anything. He never so much as drove away fast from the scene of any of the alleged thefts. Instead, Fritz was merely observed acting suspiciously in one incident, and found to have been waiting in the car for his girlfriend on another (during which she apparently did steal merchandise).[11] On these facts, no prosecutor would doubt Fritz's guilt, but no

---

[10] The evidence against his girlfriend was stronger, but even a conspiracy allegation cannot spin straw into gold.

[11] The third incident was completely meaningless except as seasoning for the other two.

prosecutor would expect a conviction without getting the shoplifting history before the jury. And because the erroneously admitted evidence establishing that shoplifting history was so essential to this case, we cannot say with any certainty that the jury would have convicted him absent that knowledge.

The judgment is reversed.

Sills, P. J., and O'Leary, J., concurred.