Filed 3/16/21  P. v. Miller CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PARIS VALONTE MILLER,<br><br>    Defendant and Appellant. | F078667<br><br>(Super. Ct. No. F18905158)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Edward Sarkisian, Jr., Judge.

Kristine Koo, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Cameron E. Goodman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Poochigian, Acting P.J., Meehan, J. and Snauffer, J.

Defendant Paris Valonte Miller stands convicted of residential burglary. On appeal, she contends that the trial court erred in (1) admitting evidence that she gave a false name when arrested for a different offense to prove consciousness of guilt, and (2) imposing fines and fees without assessing her ability to pay. We affirm.

## PROCEDURAL SUMMARY

On November 6, 2018,[1] the Fresno County District Attorney filed an amended information charging defendant with residential burglary (Pen. Code,[2] §§ 459, 460, subd. (a); count 1).

On November 14, a jury found defendant guilty on count 1.

On December 21, the trial court sentenced defendant to the middle term of four years on count 1. The trial court also imposed a restitution fine (§ 1202.4) of $1,200, a court operations fee (§ 1465.8) of $40, and a criminal conviction fee (Gov. Code, § 70373) of $30.

On December 31, defendant filed a notice of appeal.

On August 23, 2019, defendant requested the trial court make a determination on her ability to pay the fines and fees imposed pursuant to section 1237.2 and *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). On September 10, 2019, the trial court denied the request, noting that defendant did not raise the issue at sentencing, did not appear to have any physical or mental condition that would prevent employment, and would have the opportunity to earn prison wages while incarcerated.

---

[1] All further dates refer to the year 2018 unless otherwise stated.

[2] All further statutory references are to the Penal Code unless otherwise stated.

## FACTUAL SUMMARY

**The Prosecution's Case**

*The Burglary*

On March 6, at about 10:00 a.m., Oma G. returned to her apartment in Fresno to find that it had been broken into. The wrought iron security screen door and the wooden entry door had both been forced open and the interior was in disarray. Items were scattered in the living area, her mattress had been removed from the bed, and her drawers had been removed from the dressers. Items had been taken, including her CD player, clothing, boots, purses, jewelry, coins, silverware, and two televisions. Pizza boxes, beer cans, a soda can, Styrofoam boxes from the corner store, and a jacket that did not belong to Oma were left behind. Oma called 911 to report the burglary.

Oma did not spend every night at her apartment. She was a caretaker for her 92-year-old mother with dementia, so she often spent the night at her mother's home. On March 6, it had been about a week since she had been to her apartment.

Fresno Police Cadet Christian Hill responded to Oma's 911 call. He recovered latent fingerprints in Oma's apartment from a mirror, a soda can, a tray that normally contained dominoes, and a sliding glass door. The latent fingerprints yielded two results: defendant and Vincent Butler. Oma was shown defendant's photograph. Oma did not know defendant and had not authorized her to enter her apartment.

Fresno Police Detective Ariana Kasparian worked on cases involving break-ins at abandoned houses. She testified that abandoned houses do not typically have furniture, a former owner's personal property, or food left in the refrigerator. "They [are] usually bare … [n]othing inside, just basically the bones of the house."

*The False Name*

Near the end of July, Fresno Police Officer Ying Steve Vang contacted defendant at a big-box store in connection with a separate incident.[3] During that contact, defendant identified herself as Robin Smith. Vang contacted a dispatcher to verify defendant's identity and discovered that Robin Smith was deceased. Defendant then admitted her true name. Vang then discovered that defendant had an outstanding warrant for the burglary charged in this case and placed defendant under arrest.

## Defendant's Case

Defendant testified that in January, she had been homeless for about two years. Defendant had previously been cited for trespassing while she was homeless. She and other homeless people would occasionally enter an abandoned building, warehouse, house, or apartment to sleep for the night. Defendant slept in abandoned buildings at least 15 to 20 times. It was not unusual for some of those abandoned buildings to have furniture and beds.

In early March, defendant went to Oma's apartment at the invitation of Vincent Deon. Vincent was known in the homeless community as the "bando king"[4] because he found abandoned buildings for homeless people to stay in. Defendant went to Oma's apartment for a place to sleep. She believed that the apartment was abandoned. When she arrived at the apartment, Vincent and his girlfriend had already been there and the place was "[t]hrashed[;] [there were] things laying around everywhere[,] [p]eople inside[,] … empty chip bags, beer cans, [a] dry paint bucket, [and] clothing items … just things thrown about." She stayed at the apartment for seven or eight hours during the

---

**3** The jury was not informed that Vang's contact with defendant was in response to her detention by store loss prevention officers for suspected shoplifting.

**4** "Bando" was slang for abandoned building.

daytime. While she was there, she ate pizza and drank a soda, used the restroom, and slept on the couch. Defendant did not take anything from Oma's apartment.

Defendant admitted that she had suffered multiple theft-related convictions, and a fraud conviction.

## DISCUSSION

**1. False Name Evidence**

Defendant argues that the trial court abused its discretion in admitting evidence that she gave a false name while she was detained for shoplifting. She contends that giving the false name was related to the shoplifting and unrelated to the burglary, and therefore could not have shown consciousness of guilt. The People disagree, arguing that giving the false name reflected consciousness of guilt as to the burglary because "[t]he evidence presented to the trial court indicated that [defendant] had an arrest warrant for a burglary and that [defendant] was arrested solely based on the burglary warrant, not due to the shoplifting." Alternatively, the People argue that any error was harmless. We conclude that the admission of the false name evidence was not an abuse of discretion, and in any event, any error was harmless.

Generally, giving a false name or false information to a law enforcement officer investigating a crime supports an inference of consciousness of guilt. (*People v. Watkins* (2012) 55 Cal.4th 999, 1028; *People v. Geier* (2007) 41 Cal.4th 555, 589 [" '[t]he inference of consciousness of guilt from willful falsehood or fabrication or suppression of evidence is one supported by common sense, which many jurors are likely to indulge even without an instruction' "].) However, courts have cautioned that such false statements regarding commission of a crime must concern the crime or crimes for which the defendant is charged to establish consciousness of guilt. (*People v. Fritz* (2007) 153 Cal.App.4th 949, 952; see also CALCRIM No. 362 [allowing a jury to draw an inference of consciousness of guilt if the defendant made a false or misleading statement "*relating to the charged crime*" (italics added)]; CALJIC No. 2.03 [similar].)

Defendant contends that giving a false name was related to the shoplifting offense for which she was detained.  That is certainly one logical inference that could be drawn.  However, defendant giving a false name to an officer during a detention for shoplifting could have suggested that she sought to avoid punishment on the shoplifting, or because she had committed the prior burglary, or other crimes.  (See *People v. Blakeslee* (1969) 2 Cal.App.3d 831, 839 ["the logical force of [a] deduction [of consciousness of guilt] is weakened when there is some plausibility to the defendant's subsequent explanation of the reason for the falsehood"].)  The fact that there were multiple reasonable inferences that could have been drawn from defendant's use of a false name did not require exclusion of the evidence.  (*People v. Watkins*, *supra*, 55 Cal.4th at pp. 1027–1028 [allowing evidence that the defendant refused to stand in a lineup to prove consciousness of guilt even though the defendant had an alternative explanation]; *People v. Bay* (2019) 40 Cal.App.5th 126, 133; see *People v. Jenkins* (1979) 91 Cal.App.3d 579, 585–586 [false name evidence from which multiple inferences could be drawn can be admissible even if it is insufficient to sustain a conviction].)  Indeed, the instruction on consciousness of guilt reflected that it was the jury's duty to determine whether "defendant made a false or misleading statement … *relating to the charged crime*" and, if so, the "conduct *may show* she was aware of her guilt … and [the jury] may consider it in determining her guilt."  (See CALCRIM No. 362, italics added.)  The trial court did not abuse its discretion in admitting the evidence of defendant's use of a false name.

When evidence supporting an inference of consciousness of guilt is admitted, instruction pursuant to CALCRIM No. 362 is appropriate.  (*People v. Howard* (2008) 42 Cal.4th 1000, 1024–1025.)  Further, defendant forfeited the claim of instructional error by failing to object below.  (See *People v. Anderson* (2007) 152 Cal.App.4th 919, 927 [claim is forfeited on appeal if not objected to unless it impacts fundamental rights].)

Any error in admitting the challenged evidence and in giving CALCRIM No. 362, even if not forfeited, was harmless under any prejudice-based standard of review.

(*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Williams* (2000) 79 Cal.App.4th 1157, 1171.) Oma did not know defendant and did not authorize her to enter the apartment. Defendant's fingerprints were recovered from inside the apartment and she admitted being inside the apartment. Defendant had been convicted of multiple prior theft-related offenses. Defendant's testimony was otherwise not credible. Her testimony that the apartment was abandoned was inconsistent with the other evidence. Kasparian testified that abandoned apartments are normally empty inside. In this case, the state of the apartment was inconsistent with it being abandoned. The power was on, all of the appliances were still in the apartment, food was in the refrigerator, the kitchen table and six chairs were in the kitchen, and two large leather accent chairs, a couch, and a coffee table were in the living room. Further, the testimony regarding defendant giving a false name was brief and was not repeated in the People's closing argument. (See *People v. Jennings* (1991) 53 Cal.3d 334, 390.) Based on the overwhelming evidence of guilt, the other evidence that undermined defendant's credibility, the brief amount of time spent on the false name evidence, and the fact that the false name testimony was not mentioned by the People during closing argument, we conclude beyond a reasonable doubt that exclusion of the false name evidence would not have resulted in a different verdict. (*Chapman*, at p. 24.)

## 2. Restitution Fine and Fees

### A. *Dueñas*

First, defendant relies on *Dueñas* and argues the court improperly imposed a $1,200 restitution fine (§ 1202.4), a court operations fee of $40 (§ 1465.8), and a criminal conviction fee of $30 (Gov. Code, § 70373), without determining her ability to pay in violation of her due process rights. Defendant also contends that the imposition of fines and fees without assessing her ability to pay constituted imposition of excessive fines as prohibited by the Eighth Amendment (as applied through the 14th Amendment) and article I, section 17, of the California Constitution. The People respond that defendant

forfeited her fine- and fee-related claims, that she failed to "show an inability to pay the non-punitive fees," and "has no constitutional right to an ability-to-pay hearing for the restitution fine." We agree with the People that defendant's fine- and fee-related claims are forfeited.

The parties agree that defendant's trial counsel did not object at sentencing to the imposition of the $1,200 restitution fine, the $40 court operations fee, or the $30 criminal conviction fee. When the court imposes a restitution fine greater than the $300 statutory minimum amount, "[s]ection 1202.4 expressly contemplates an objection based on inability to pay," and a defendant's failure to object results in forfeiture of the issue. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153 (*Frandsen*).) Such a forfeiture rule has been consistently followed. (*People v. Nelson* (2011) 51 Cal.4th 198, 227; *People v. Gamache* (2010) 48 Cal.4th 347, 409; *People v. Trujillo* (2015) 60 Cal.4th 850, 853–854.) Here, the court ordered defendant to pay a restitution fine of $1,200 under section 1202.4, subdivision (b), an amount greater than the statutory minimum fine. Defendant had the statutory right to object to the $1,200 restitution fine and demonstrate her alleged inability to pay. Such an objection "would not have been futile under governing law at the time of [her] sentencing hearing," and her failure to do so has forfeited the issue. (*Frandsen,* at p. 1154; *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1053–1054; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1032–1033.)

In addition, any objections to the assessments imposed under section 1465.8 and Government Code section 70373, and the other fees, would not have been futile. As the Court of Appeal explained in *Frandsen*, *supra*, 33 Cal.App.5th at page 1154, "[a]lthough both statutory provisions mandate the assessments be imposed, nothing … [prevented a defendant] from making the same request that the defendant in *Dueñas* made in the face of those same mandatory assessments. [A defendant] plainly could have made a record had [her] ability to pay actually been an issue. Indeed, [she] was obligated to create a record showing [her] inability to pay the … restitution fine, which would have served to

also address [her] ability to pay the assessments." (*Frandsen, supra*, 33 Cal.App.5th at p. 1154.)  Here, defendant was required to create a record to claim her alleged inability to pay the restitution fine.  If she had done so, presumably the record would have included evidence that addressed her inability to pay the other fines, fees, and assessments imposed in this case.  (*People v. Gutierrez, supra*, 35 Cal.App.5th at p. 1033; *People v. Jenkins* (2019) 40 Cal.App.5th 30, 40–41; *People v. Keene* (2019) 43 Cal.App.5th 861, 863–864.)

Defendant did not object to the court's imposition of any of the fines, fees, or assessments, or claim she lacked the ability to pay any of these amounts and has forfeited review of these issues.

## DISPOSITION

The judgment is affirmed.