Filed 11/18/21  P. v. McGovern CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>WILLIAM ANTHONY MCGOVERN,<br><br>  Defendant and Appellant. | C089570<br><br>(Super. Ct. No. STKCR201514102) |

Richard Crowley wanted to buy a large quantity of methamphetamine.  His friend, defendant William Anthony McGovern, found him a seller and accompanied Crowley to the home of the intermediary where the transaction was completed.  The person who furnished the methamphetamine was a validated Norteño gang member and the intermediary was an associate of the gang.  Neither Crowley nor defendant are gang members.  Law enforcement officers learned about the sale from wiretaps that were part of a gang investigation.  This appeal addresses questions related to a gang enhancement defendant was charged with but never convicted of.

1

Defendant was charged with transportation of methamphetamine for sale in an amount more than 1,000 grams (Health & Saf. Code, §§ 11379, subd. (a), 11370.4, subd. (b)(1)) with a gang enhancement (Pen. Code, § 186.22, subd. (b)(1)).[1]  The trial court denied defendant's section 995 motion to set aside the gang enhancement and motion to bifurcate the enhancement, but granted defendant's section 1118.1 motion to set aside the enhancement at the conclusion of the trial.

Following a jury trial, defendant was convicted of the methamphetamine charge and the amount enhancement.  The trial court sentenced him to a six-year state prison term.

On appeal, defendant contends it was prejudicial error to deny the bifurcation motion and his section 995 motion to set aside the enhancement, and to instruct the jury with CALCRIM No. 362 regarding false statements and consciousness of guilt.

It was within the court's discretion not to bifurcate the enhancement as the gang evidence was minimally prejudicial and was relevant to explaining the investigation that discovered the drug sale.  While there was insufficient evidence to sustain the indictment for the gang enhancement, defendant was not prejudiced by this error.  Finding CALCRIM No. 362 does not violate due process and was supported by the evidence, we shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Case*

A.  *Crowley's Testimony*

Richard Crowley[2] wanted to buy $15,000 worth of methamphetamine but did not know anyone who could furnish this much of the drug.  He asked defendant if he could get the drugs for Crowley.  Defendant made a phone call and set up the transaction for the

---

[1]      Undesignated statutory references are to the Penal Code.

2

next day. He did not tell Crowley the name or address of the seller, or the price of the methamphetamine. Crowley was to give defendant a portion of the drugs as compensation for setting up the purchase.

Crowley's account of the transaction is as follows. On August 10, 2015, Crowley borrowed his girlfriend's Jeep, and defendant, as a passenger, directed Crowley to a building on a rural property in Stockton as Crowley drove them from his home in Rio Vista. Upon arrival, they both got out of the Jeep and walked over to a storage container. Crowley could not recall which of them carried the bag of money for the purchase, but the one who had it gave it to defendant's friend, who was waiting for them inside the container. Defendant's friend was not wearing any gang colors and Crowley did not notice if he had any gang tattoos. Crowley thought defendant did not know of the man's association with the Norteño gang because defendant's friend was white rather than Mexican and because the person had non-gang tattoos. Either defendant or the friend briefly left the building and returned with a black bag containing the methamphetamine. Crowley and defendant returned to the Jeep and started driving back to Rio Vista until they were stopped and arrested.

B. *Investigation and Arrest*

In 2015, a gang task force used wiretaps and covert surveillance to investigate the sale of illegal drugs and firearms by Norteño gang members in San Joaquin County. Agents learned that Juana Zazueta, a life-inmate and highly ranked member of the Nuestra Familia gang, was working with two high ranked Norteños, cousins Juan Solorio and Jesus Alvarado, who were distributing and selling large amounts of drugs and firearms to others working on behalf of the Norteño gang. Solorio and Alvarado both

---

**2** Crowley pleaded guilty to transportation of over 1,000 grams of methamphetamine with a gang enhancement and agreed to testify in exchange for a sentence of time served.

3

were known to law enforcement as Norteño gang members. They worked with David Horn; there was no evidence he was a gang member but he did associate with Solorio.

Through the use of wiretaps, agents learned on August 10, 2015, that Horn was brokering a four-pound methamphetamine deal on behalf of unknown persons from Rio Vista, using drugs supplied by Solorio. Alvarado obtained the drugs for Solorio, who brought them to Horn's location after Horn determined the prospective buyers had brought the money. In anticipation of the sale, task force members followed Solorio's car and were covertly surveilling the container where Horn was awaiting the buyers.

Solorio parked his car outside of the container at around 4:47 p.m. Solorio called Horn and told him he was waiting in his car outside. Horn exited the building, walked to Solorio's car, and retrieved a black bag from within. Horn took the black bag into the building and returned to Solorio's car a few minutes later carrying a blue bag, which he gave to Solorio. Horn sat in the front passenger seat of the car and Solorio drove them away. Moments later, defendant and Crowley left the building, carrying what appeared to be the same black bag Horn took from Solorio's car.

San Joaquin County Sheriff's Deputy George Negrete picked up surveillance on Crowley's Jeep and stopped it on the freeway, near Lodi. As he walked toward the Jeep, Deputy Negrete noticed defendant, the front seat passenger, moving furtively around the center console area. Deputy Negrete's police dog alerted on the passenger side of the center console and on a jacket on the back seat, which was covering a black bag. The deputy searched the vehicle and found a scale and pipe containing methamphetamine residue on the rear floorboard, near the console area behind the passenger seat. The black bag contained four separately wrapped one-pound bags of methamphetamine, wrapped in rags soaked in axle grease, a substance commonly used by drug transporters to conceal scent from drug-sniffing dogs.

4

Crowley told Deputy Negrete he knew nothing about the drugs and did not know if they belonged to him or defendant. Defendant gave the same response. Neither of them seemed surprised when they were confronted about the drugs in the Jeep.

C. *Gang Expert*

Stockton Police Detective Jason Mamaril testified as an expert on the Nuestra Familia and Norteño gangs. Nuestra Familia is primarily composed of people serving life or very long prison sentences, while the Norteño gang acted as Nuestra Familia's "street soldiers" by operating criminal activities on the outside and in county jails. Among the primary functions of the Norteños were trafficking narcotics, firearm violations, homicides, and assaults with deadly weapons. Members no longer have to be Hispanic, do not necessarily wear gang colors or display gang tattoos, and do not necessarily flash gang signs when committing crimes. Alvarado and Solorio are Norteño members who had each been convicted of transporting methamphetamine on behalf of the Norteño gang, felon in possession of a firearm, and being an active participant in a criminal street gang. Horn had been convicted of conspiracy to traffic narcotics for the benefit of, at the direction of, or in association with the Norteño gang.

The Norteño gang dominated organized crime in San Joaquin County, with drug sales being a primary income source. Detective Mamaril opined that defendant's crime benefitted a criminal street gang as the proceeds filter up to Solorio and the person he reports to. He admitted that there was no evidence defendant was a gang member or had any direct contact with Solorio or Alvarado. Detective Mamaril did not personally know if Horn was a validated gang member, and could not point to any evidence from which defendant could infer Horn's gang association.

*Defense Case*

Defendant's friend and former employer Christopher Ridinger testified that he and defendant were playing horseshoes on August 9, 2015. Earlier that day, defendant had asked Ridinger for a ride to Stockton to pick up his bicycle. Crowley, who lived near

5

defendant's girlfriend, joined defendant and Ridinger in their horseshoe game. After Crowley told defendant he was going to Stockton the next day, defendant agreed to go with Crowley.

DISCUSSION

I

*Gang Allegation*

Defendant contends the trial court prejudicially erred and deprived him of due process by denying his motion to bifurcate the gang enhancement and in denying his motion to set aside the gang enhancement pursuant to section 995.

A. *Background*

Defendant filed a pretrial motion to bifurcate the section 186.22, subdivision (b)(1) gang enhancement and a section 995 motion to set aside the enhancement, asserting the gang evidence was not inextricably intertwined with the charged offense and there was insufficient evidence to support the probable cause finding on the enhancement.[3] The trial court denied the motions, finding that the prosecution could not present the case without going into gang aspects of the investigation in order to explain how defendant came within the purview of law enforcement and there was evidence of probable cause in support of the enhancement.

B. *Bifurcation*

We review a trial court's denial of a motion to bifurcate trial of a gang enhancement for an abuse of discretion. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1048 (*Hernandez*).) Bifurcation of the gang enhancement raises issues similar to those a

---

[3]     Defendant also moved to set aside the enhancement pursuant to section 995 for insufficient evidence of probable cause for the grand jury to sustain the allegation, which the trial court denied. Although the Attorney General argues this ruling was correct, we do not address the trial court's denial of this motion since defendant does not contest it on appeal.

6

court considers when asked to bifurcate trial on a prior conviction, but not to the same extent. "A prior conviction allegation relates to the defendant's *status* and may have no connection to the charged offense; by contrast, the criminal street gang enhancement is attached to the charged offense and is, by definition, inextricably intertwined with that offense. So less need for bifurcation generally exists with the gang enhancement than with a prior conviction allegation. [Citation.]" (*Ibid.*, original italics.)

The *Hernandez* court further explained:

"This is not to say that a court should never bifurcate trial of the gang enhancement from trial of guilt. The authorization we found in [*People*] *v. Calderon* [(1994)] 9 Cal.4th 69, for bifurcation of a prior conviction allegation also permits bifurcation of the gang enhancement. The predicate offenses offered to establish a 'pattern of criminal gang activity' (§ 186.22, subd. (e)) need not be related to the crime, or even the defendant, and evidence of such offenses may be unduly prejudicial, thus warranting bifurcation. Moreover, some of the other gang evidence, even as it relates to the defendant, may be so extraordinarily prejudicial, and of so little relevance to guilt, that it threatens to sway the jury to convict regardless of the defendant's actual guilt.

"In cases not involving the gang enhancement, we have held that evidence of gang membership is potentially prejudicial and should not be admitted if its probative value is minimal. [Citation.] But evidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. [Citations.] To the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary. [Citation.]

7

"Even if some of the evidence offered to prove the gang enhancement would be inadmissible at a trial of the substantive crime itself—for example, if some of it might be excluded under Evidence Code section 352 as unduly prejudicial when no gang enhancement is charged—a court may still deny bifurcation.  In the context of severing charged offenses, we have explained that 'additional factors favor joinder. Trial of the counts together ordinarily avoids the increased expenditure of funds and judicial resources which may result if the charges were to be tried in two or more separate trials.' [Citation.]  Accordingly, when the evidence sought to be severed relates to a charged offense, the 'burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried.  [Citations.]  When the offenses are joined for trial the defendant's guilt of all the offenses is at issue and the problem of confusing the jury with collateral matters does not arise.  The other-crimes evidence does not relate to [an] offense for which the defendant may have escaped punishment.  That the evidence would otherwise be inadmissible may be considered as a factor suggesting possible prejudice, but countervailing considerations that are not present when evidence of uncharged offenses is offered must be weighed in ruling on a severance motion.  The burden is on the defendant therefore to persuade the court that these countervailing considerations are outweighed by a substantial danger of undue prejudice.'  [Citation.]"  (*Hernandez, supra*, 33 Cal.4th at pp. 1049-1051.)

Unlike most cases raising the issue of whether a gang enhancement should have been bifurcated, there was no evidence defendant himself was a gang member, and the trial court set aside the enhancement for insufficient evidence at the close of the prosecution case.  The prosecution theory was that defendant knew the drugs were being bought from gang members even though he was not a gang member himself and therefore

intended to benefit the gang by purchasing drugs from them.[4] This makes the gang evidence less intertwined with the substantive offence than in a case where a gang member is charged with a crime and gang enhancement, but it also diminishes the potential prejudice, as there was no evidence defendant was a gang member, a fact admitted by the prosecution's gang expert.

The gang allegation was nonetheless sufficiently intertwined with the substantive charge to support joinder. The drugs were furnished by gang members, Solorio and Alvarado, and sold by a gang associate, Horn. More importantly, all of the evidence corroborating Crowley's testimony of the transaction was obtained through the task force's investigation of Nuestra Familia and Norteño operations in the area. Wiretaps for the purpose of investigating the gang activities allowed officers to determine that Alvarado and Solorio were involved in the sale of drugs to two purchasers from Rio Vista, and to determine where the sale was taking place. The fact that the people selling the drugs were Norteño members or associates is a necessary context to the prosecution's theory of the case.

Given the gang connection to the drug sale, the need to explain this to the jury, and the lack of any prejudice stemming from evidence that defendant was a gang member, it was within the trial court's discretion to deny the bifurcation motion.

C. *Section 995 Motion*

"The purpose of a motion to set aside the accusatory pleading under Penal Code section 995 is to review the sufficiency of the indictment or information on the basis of the record made before the grand jury in the one case or the magistrate at the preliminary

---

[4]     As the trial court said when ruling on the section 995 motion, "this case is different than the cases cited in that they typically involve someone being accused of being a gang member. Mr. McGovern is not being accused of being a gang member here. He's accused of associating and doing business with them to their benefit and promoting them."

hearing in the other." (*Stanton v. Superior Court* (1987) 193 Cal.App.3d 265, 269.) " 'An indictment will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.' [Citation.]" (*People v. Crosby* (1962) 58 Cal.2d 713, 719.)

" '[S]ufficient cause' " is " 'reasonable and probable cause' " or "a state of facts as would lead a [person] of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.]" (*People v. Uhlemann* (1973) 9 Cal.3d 662, 667.) This is an " 'exceedingly low' " standard. (*People v. Chapple* (2006) 138 Cal.App.4th 540, 545.) An indictment or information "should be set aside 'only when there is a total absence of evidence to support a necessary element of the offense charged.' [Citation.] The requisite showing may be established by circumstantial evidence. [Citation.]" (*Id.* at pp. 545-546.) These standards similarly apply to enhancement allegations. (*Salazar v. Superior Court* (2000) 83 Cal.App.4th 840, 842, 846.) On review of a section 995 motion to dismiss, we directly review the grand jury's or magistrate's finding, deferring to its judgment regarding the weight or credibility of evidence, and drawing every reasonable inference in favor of the indictment or information. (*Chapple*, at p. 546.)

Section 186.22 provides an enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(1).) The evidence must establish both of the two prongs to the gang enhancement under section 186.22, subdivision (b)(1). "First, the prosecution is required to prove that the underlying felonies were 'committed for the benefit of, at the direction of, or in association with any criminal street gang.' (§ 186.22[, subd. ](b)(1).) Second there must be evidence that the crimes were committed 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.' [Citations.]" (*People v. Rios* (2013) 222 Cal.App.4th 542, 561.)

10

Grand jury testimony shows Horn contacted Solorio to tell him he had customers who wanted to purchase four pounds of methamphetamine. Solorio arrived at the residence at 4:47 p.m. on August 15, 2015. Solorio met with Horn and then Horn got a black bag from the passenger side of Sandoval's car. Horn handed Solorio a blue bag, which he took and then drove off with it. Crowley and defendant took the black bag to their Jeep and drove off. Four one-pound bags of methamphetamine were found in the Jeep. Missing from the grand jury testimony is any evidence that defendant knew or had reason to infer he was facilitating a drug purchase from gang members. There was no evidence Solorio displayed visible gang insignia or tattoos that day, or that defendant had any knowledge of either person's gang membership.[5] We conclude there is insufficient evidence defendant intended to promote, further, or assist criminal conduct by a gang to support the enhancement.

In addition to proving the denial of the section 995 motion was error, defendant must also show the error was prejudicial. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 140.) An appellate court reviewing an erroneously denied section 995 motion typically finds no prejudice because the presentation of sufficient evidence at trial to support the charges in question vitiates any prejudice to the defendant. (See, e.g., *Letner and Tobin* at p. 140; *People v. Crittenden* (1994) 9 Cal.4th 83, 137.)

---

[5]     We also note that the Attorney General has failed to provide us to a citation from the grand jury transcript establishing Horn's or Solorio's gang membership. The citations the Attorney General provides for this point, taken in turn from the prosecution's opposition to the section 995 motion, do not support Solorio's or Horn's gang membership. Our perusal of a grand jury transcript that is over 1,000 pages long, addressing 28 defendants, 73 counts, and dozens of witnesses could not immediately find any reference to Horn or Solorio being a gang member. While evidence at trial showed Solorio was a gang member and that Horn associated with gang members, we review the evidence before the grand jury rather than what was admitted at trial. (See *Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 567, fn. 2 [appellate review limited to record before entity making the decision to be reviewed].)

Although the prosecution failed to present sufficient evidence of the enhancement at trial, we nonetheless find no prejudice. As previously addressed in our bifurcation discussion, gang evidence was inextricably intertwined with the charged offence, as defendant's scheme was noticed only through the gang investigation and he and Crowley purchased the drugs from gang members. The gang evidence was not especially prejudicial, as none of it established defendant's gang membership. Most importantly, the evidence of defendant's guilt was overwhelming. Crowley's account of the drug sale was largely verified by wiretaps showing Horn had found two people in Rio Vista wanting to purchase four pounds of methamphetamine, officer observations of the transaction involving defendant and Crowley at Horn's residence, their taking to the Jeep the black bag that Solorio had given to Horn, and the presence of the four pounds of methamphetamine in their Jeep when it was stopped after driving from Horn's residence.

In light of the overwhelming evidence of defendant's guilt, we find defendant was not prejudiced by the erroneous denial of his section 995 motion on the gang enhancement.[6]

## II

### CALCRIM No. 362

Defendant's final contention is the trial court prejudicially erred in instructing the jury with CALCRIM No. 362 on false statements as evidence of guilt.

Over defendant's objection, the trial court instructed the jury with CALCRIM No. 362 as follows:

"If the defendant made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct

---

[6] Since defendant was not prejudiced by the erroneous denial of his section 995 motion, the lack of proof of the gang enhancement does not change our analysis of the denial of defendant's bifurcation motion.

may show he was aware of his guilt of the crime and you may consider it in determining his guilt.

"If you conclude the defendant made the statement, it is up to you to decide its meaning and importance.· However, evidence that the defendant made such a statement cannot prove guilt by itself."

Defendant argues the instruction violates due process by directing the jury to infer guilt because he made a false statement regarding the charged crime. He additionally contends there was insufficient evidence to support the instruction. We reject both arguments.

A. *Due Process*

Defendant acknowledges that *People v. Crandell* (1988) 46 Cal.3d 833, 871 approved the prior version of this pattern instruction, CALJIC No. 2.03,[7] rejecting a claim that language allowing a jury to use the making of a false statement as " 'a circumstance tending to prove a consciousness of guilt' " (see *People v. Covarrubias* (2016) 1 Cal.5th 838, 908, fn. 30) is akin to being allowed to treat the falsehood as a full confession to the crime charged. Reasonable jurors "would understand 'consciousness of guilt' to mean 'consciousness of some wrongdoing' [in the psychological sense] rather than 'consciousness of having committed the specific offense charged' [in the legal sense]." (*Crandell*, at p. 871.) He claims a change in a change in phrasing in the present pattern instruction—under which the trial court instructed the present jurors that a knowing falsehood about the charged crime may show he was aware of his guilt of the

---

[7] CALJIC No. 2.03 reads: "If you find that before this trial [a] [the] defendant made a willfully false or deliberately misleading statement concerning the crime[s] for which [he] [she] is now being tried, you may consider that statement as a circumstance tending to prove a consciousness of guilt. However, that conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide."

13

crime rather than he was "conscious" of "some wrongdoing" as CALJIC No. 2.03, did, materially distinguishing *Crandell*.

A panel of this court rejected a similar attack on CALCRIM No. 362 in *People v. McGowan* (2008) 160 Cal.App.4th 1099. The defendant in *McGowan* claimed CALCRIM No. 362 improperly pinpointed false statements. (*McGowan,* at p. 1103.) We found the Supreme Court's rejection of such claims on CALIJIC No. 2.03 to be controlling: "Although there are minor differences between CALJIC No. 2.03 and CALCRIM No. 362 . . ., none is sufficient to undermine our Supreme Court's approval of the language of these instructions." (*McGowan,* at p. 1104.) The same applies here. Like the term under attack in *Crandell*, "consciousness of guilt," the term defendant attacks here, "aware of his guilt of the crime," would not lead a jury to conclude the false statement was a confession, but was rather evidence of a guilty mind.

As we stated in another case rejecting an attack on CALCRIM No. 362: "Further, CALCRIM No. 362 limits the reach of any adverse inference both by telling the jury that it decides the 'meaning and importance' of the evidence and by telling the jury the making of a willfully false statement 'cannot prove guilt by itself.' (CALCRIM No. 362.) CALCRIM No. 362, like CALJIC No. 2.03 before it, is designed to benefit the defense, ' "admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory." [Citation.]' [Citation.] And because the evidence cannot prove guilt by itself, a jury would understand that the consciousness of guilt—however deep it ran—was not the equivalent of a confession. [Citation.]" (*People v. Burton* (2018) 29 Cal.App.5th 917, 925, italics omitted.) The same applies here. CALCRIM No. 362 does not violate a defendant's right to due process.

B. *Evidentiary Support*

A trial court properly instructs on consciousness of guilt where there is some evidence in the record that, if believed by the jury, would sufficiently support the inference suggested in the instructions. (*People v. Bowman* (2011) 202 Cal.App.4th 353,

366.)  Such an instruction is proper if there is some evidence in the record to support the inference.  (*People v. Hannon* (1977) 19 Cal. 3d 588, 597.)

Consciousness of guilt may be inferred from a defendant's false or misleading statements made to arresting officers or others for the purpose of misleading or allaying suspicion.  (*People v. Fritz* (2007) 153 Cal.App.4th 949, 959.)  Defendant argues the evidence supporting the instruction was minimal because his statements to Officer Negrete after the methamphetamine was found did not necessarily lead to the conclusion that he knowingly made a false statement.  Not so.  There was evidence defendant set up the methamphetamine sale for Crowley, directed him to the location where it took place, and was with him when the transaction was completed.  A jury could reasonably find his denial of any knowledge about the methamphetamine or who possessed it was knowingly false, and could reasonably infer a guilty mind from the denial.  The instruction was properly given.

## DISPOSITION

The judgment is affirmed.

_____\\s\\_____,
BLEASE, Acting P. J.

We concur:

_____\\s\\_____,
HULL, J.

_____\\s\\_____,
KRAUSE, J.