Filed 6/12/25  Gomez v. State Personnel Board CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| JESUS GOMEZ,<br><br>　　　　　Petitioner and Respondent,<br><br>　　v.<br><br>STATE PERSONNEL BOARD,<br><br>　　　　　Respondent;<br><br>DEPARTMENT OF THE CALIFORNIA HIGHWAY PATROL,<br><br>　　　　　Real Party in Interest and Appellant. | C100533<br><br>(Super. Ct. No. 34-2022-80004048-CU-WM-GDS) |

The Department of the California Highway Patrol (CHP) dismissed Jesus Gomez after he claimed overtime for time he spent at home not working.  Gomez afterward sought review from the State Personnel Board (the Board) but the Board sustained the dismissal, finding, among other things, that Gomez acted dishonestly and that dismissal

1

was an appropriate penalty.  Gomez then petitioned the trial court to set aside the Board's decision, largely on the ground that insufficient evidence showed he acted dishonestly.  Agreeing with Gomez, the trial court granted his petition.  On CHP's appeal, we reverse.

BACKGROUND

I

*Overtime at CHP's East Los Angeles Office and Overtime for Caltrans*

CHP and the Department of Transportation (Caltrans) have entered into several agreements for traffic safety services.  One is known as the Maintenance Zone Enhanced Enforcement Program (MAZEEP) agreement.  Under this agreement, CHP officers provide traffic safety services for Caltrans and Caltrans then reimburses CHP for the officers' time and mileage.  Participating officers can receive overtime compensation for time spent on this program.

Officers from several CHP offices have participated in this program, including officers in CHP's East Los Angeles office (the East LA office).  That office has a standard operating procedure covering overtime, part of which discusses overtime under the MAZEEP agreement.  Starting in 2012, this overtime procedure stated in relevant part: "If Caltrans ends a detail early due to unforeseen circumstances but continues to pay the officer for the duration of the contract, the officer shall remain available to Caltrans by standing by at the office."[1]

The East LA office added this language following concerns that officers were claiming full overtime even when Caltrans ended details early—which sometimes happens because of equipment issues, low supplies, and other unforeseen circumstances.  Before this amendment to the standard operating procedure, some sergeants initially

---

[1]  In past years, a typical MAZEEP shift covered six and a half to eight hours.  Under the MAZEEP agreement, Caltrans agreed that when a CHP officer reports for detail and works less than four hours, Caltrans will still pay a minimum of four hours of overtime.

2

dismissed concerns about this overtime practice, reasoning that officers should still be compensated for a full shift even if it ended early.  But in time, the sergeants at the East LA office agreed that to receive full compensation in this circumstance, the officers would need to remain available to Caltrans by standing by at the office.

After the East LA office added this language, a sergeant photocopied the standard operating procedure, highlighted the new overtime language, and posted it on a bulletin board next to overtime sign-up sheets for MAZEEP.  The document remained on the bulletin board until about April 2016.  This sergeant also directed those in charge of shift briefings to advise officers about the new overtime language.  These individuals then covered this language in their shift briefings for about a week in 2012.

II

*Gomez's Dismissal*

Gomez joined CHP as an officer in 2003 and transferred to the East LA office in 2015.  All parties agree that between May 2017 and March 2018, Gomez participated in 37 MAZEEP details that Caltrans ended before the contractual end time.  On each of these occasions, Gomez checked out a patrol car before the start of the detail and returned it afterward.  And on four of these dates, all between July and September 2017, he returned his patrol car and went home early.  On those four dates, he claimed a total of around five hours and 30 minutes of overtime that he spent at home.

For each of these 37 MAZEEP details, Gomez submitted a CHP form documenting his time.  Under CHP policy, officers must use this form to document their actual time expended on each activity—which Gomez was trained to do.  Here, Gomez claimed that he provided traffic control services for the entirety of each of the MAZEEP details—even on the occasions when the details ended early and he went home.  Gomez also submitted another CHP form documenting his use of patrol cars.  Under CHP policy, officers must use this form to document when they check out and return patrol cars.  In this case, Gomez noted the time he checked out a patrol car for each of the MAZEEP

3

details. But often, 23 times in the parties' counting, he omitted the time he returned the patrol car, including on all four dates when he went home early. On these four dates, he drew either an arrow or a line in the time-in box rather than note the time in—which he later said was meant to indicate that he had returned the car.

In 2018, after four individuals raised concerns about overtime abuse at the East LA office, CHP initiated an audit. During the audit, one officer at the East LA office said that 80 percent of MAZEEP details at one location ended early. He noted that some officers would afterward return to the office and comply with the standard operating procedure on overtime. But he said others would go home. He also said that some officers would buy Caltrans staff pizza in exchange for being released early. Based on this information, the auditors recommended a further investigation into overtime practices.

Acting on this recommendation, CHP interviewed several officers at the East LA office who participated in MAZEEP. Two CHP sergeants interviewed Gomez. When they asked what he would do when a MAZEEP detail ended early, Gomez said he would "[s]tand by, work on reports, do some paperwork, get caught up on reports." And when he did not have any reports to complete, he said he would "stay there sometimes at the office" and then said he "would just stay at the office." But when the interviewing sergeants pressed further, asking whether he remained at the office until the listed end time for the MAZEEP shift "a hundred percent of the time," Gomez acknowledged that he sometimes returned his patrol car, went home, and changed clothes when a detail ended early.

Gomez maintained, however, that he thought this practice permissible, noting that he only lived 10 to 15 minutes from the office and so could return quickly. He also suggested that he believed this practice permissible after reading his office's standard operating procedure on overtime, saying he acted "based on that, seeing that [standard operating procedure] that was established in East LA prior to my arrival . . . ." But he

4

ultimately said he did not remember reading this procedure. And while he said he had some understanding of this procedure after working with others, he could not identify anyone who engaged in conduct similar to his own. Of the two sergeants who interviewed Gomez, one thought Gomez sincerely believed he could stand by at his home.

Following the investigation, CHP served Gomez with a notice of adverse action. The notice invoked Government Code section 19572, which describes the grounds for which a state agency can discipline a civil service employee. (See also Gov. Code, § 18526 [defining employee].) The notice then listed five grounds for discipline under this statute: inexcusable neglect of duty, dishonesty, misuse of state property, violation of a statute covering incompatible activities, and other failure of good behavior that is "of such a nature that it causes discredit to the appointing authority or the person's employment." (*Id.*, § 19572, subds. (d), (f), (p), (r), (t).) The notice also described the discipline for this alleged misconduct—dismissal.

After the notice of adverse action, a CHP captain (who joined the East LA office after Gomez's dismissal) shared his understanding of the East LA office's overtime procedures. He indicated that these procedures have some flexibility, even though they say that "the officer shall remain available to Caltrans by standing by at the office." He explained, for example, that a uniformed officer could leave the office in a patrol car to grab coffee or food nearby and still qualify as "standing by at the office." But he added that an officer at home, out of uniform, and without a patrol car would not, emphasizing that officers need to be "in uniform, in a patrol vehicle, and ready to go." A retired CHP captain (who headed the East LA office in 2016 and 2017) also shared his understanding of the East LA office's overtime procedures. He said that officers who went home after a MAZEEP detail, but before the end time stated on their timesheets for the detail, would be violating the standard operating procedure. According to CHP, "[d]ozens" of officers were ultimately fired for this conduct following the investigation into overtime practices.

5

III

*Procedural History*

Seeking to set aside CHP's disciplinary action, Gomez filed an appeal with the Board, which is "the administrative body charged with the enforcement of the Civil Service Act, including the review of punitive action taken against [state] employees." (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 201 (*Skelly*).)

Following a hearing, an administrative law judge (ALJ) agreed with CHP's five grounds for imposing discipline under Government Code section 19572. Discussing the charge of dishonesty—the one ground relevant to this appeal—the ALJ found that Gomez was dishonest when he "submitted overtime claims for the full scheduled length of the detail" even though he knew he "had not worked full . . . details and that [he] had in fact gone home after those details ended early." The ALJ also found Gomez not credible when he said he believed his conduct was permissible.[2] The ALJ then found the discipline of dismissal appropriate, emphasizing that peace officers are held to a higher standard and that Gomez's conduct resulted in harm to the public service. The Board afterward adopted the ALJ's decision.

Seeking to have the Board's decision set aside, Gomez filed a petition for writ of mandate in the trial court under Code of Civil Procedure section 1094.5. In his subsequent briefing, Gomez argued that insufficient evidence supported the Board's finding of dishonesty and that the Board abused its discretion in sustaining the dismissal. But he largely ignored the Board's findings on inexcusable neglect of duty, misuse of

---

[2] The ALJ said that two other witnesses lacked credibility too. The ALJ noted that two lieutenants said they were unaware of the standard operating procedure on overtime when they worked at the East LA office. But the ALJ found both witnesses were not credible, gave "implausible" testimony, and "became defensive" when denying knowing the overtime procedure.

state property, violation of a statute covering incompatible activities, and other failure of good behavior. (See Gov. Code, § 19572, subds. (d), (f), (p), (r), (t).)

The trial court granted Gomez's petition. Starting with the Board's dishonesty finding, the court found the evidence insufficient to show that Gomez acted dishonestly. It reasoned that Gomez consistently stated that he believed he could claim a full overtime shift even when he returned home early and that, in its view, no contrary evidence showed otherwise. It added that one CHP sergeant who interviewed Gomez even thought Gomez sincerely believed he could stand by at his residence. And while it acknowledged that the ALJ found Gomez not credible, it declined to accept this finding, explaining that the ALJ failed to identify any specific evidence of Gomez's demeanor, manner, or attitude to support this credibility finding. (See Gov. Code, § 11425.50, subd. (b).)

Turning to the Board's imposed discipline, the trial court found the penalty of dismissal too harsh under the facts. It first noted that the Board's penalty determination was premised in large part on the dishonesty finding—which the court found lacking. It then noted four other considerations it believed weighed against the penalty of dismissal. First, it noted that Gomez claimed overtime for time spent at home only on four occasions. Second, it found the East LA office's overtime procedure, as enforced, ambiguous. Third, it said that CHP division chiefs failed to review overtime procedures with their command at frequent intervals, as CHP's manual requires, and it suggested that the division chiefs could have acted sooner and preempted Gomez's conduct had they done so. Lastly, the court noted that CHP had not imposed progressive discipline.

The trial court afterward entered judgment in Gomez's favor and directed the Board to set aside its decision and reconsider the matter. CHP timely appealed.

DISCUSSION

I

*Dishonesty*

CHP challenges both the trial court's findings. Starting on the topic of dishonesty, it contends substantial evidence in the record supports the Board's finding that Gomez acted dishonestly. We agree.

Our review here focuses on the Board's decision (not the trial court's) and is deferential. We consider only whether substantial evidence in the record supports the Board's finding that Gomez acted dishonestly within the meaning of Government Code section 19572, subdivision (f). (See *Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125 [the Board's decisions are reviewed for substantial evidence].) In conducting this review, we examine the record independently for evidence that is " 'reasonable in nature, credible, and of solid value such that a reasonable mind might accept it as adequate to support a conclusion.' " (*South Coast Framing, Inc. v. Workers' Comp. Appeals Bd.* (2015) 61 Cal.4th 291, 303.) We also must view the evidence in the light most favorable to the Board. (*Gonzalez v. State Personnel Bd.* (1995) 33 Cal.App.4th 422, 428.) Under this standard, then, we must accept the Board's finding of dishonesty if, after viewing the evidence in the light most favorable to the Board, *any* reasonable person could have made this finding.

Applying this deferential standard, we are satisfied that substantial evidence supports the Board's dishonesty finding. Gomez claimed overtime for time he spent at home on four occasions. On those dates, he signed up to work a Caltrans detail that Caltrans ultimately ended early. His office's standard operating procedure contemplated this type of scenario. It explained that "[i]f Caltrans ends a detail early due to unforeseen circumstances but continues to pay the officer the duration of the contract, the officer shall remain available to Caltrans by standing by at the office." But on these four

8

instances, Gomez did not "remain available to Caltrans by standing by at the office." He instead turned in his patrol car and went home.

Gomez also submitted inaccurate paperwork about his conduct. On these four dates, he claimed on a form documenting his time that he performed traffic control for Caltrans for the full overtime period—even though he did not. This was despite CHP policy, as Gomez had been instructed, requiring officers to document their actual time expended on each activity. And while Gomez said he believed his reporting was consistent with CHP practices, he could not identify anyone who had engaged in conduct similar to his own. On these four dates, moreover, he documented on a separate form the time he checked out a patrol car for these assignments, but he did not document the time he returned the patrol car—even though CHP policy required him to do so. In these two types of forms, then, he overstated his time spent performing traffic control and omitted facts that would have revealed his early return from MAZEEP details—all in violation of CHP policy.

Gomez further neglected to mention his early return home when investigators first asked him what he would do when a Caltrans assignment ended early. He said he would "[s]tand by, work on reports, do some paperwork, get caught up on reports" and "just stay at the office," making no mention that he would also sometimes go home. Only later, when pressed further, did he acknowledge that he sometimes returned his patrol car, went home, and changed clothes when a detail ended early. To the extent the Board believed Gomez deliberately omitted this detail when first asked, it could find this response evinced a consciousness of wrongdoing. (See *People v. Fritz* (2007) 153 Cal.App.4th 949, 959 [false or misleading statements made to mislead or ward off suspicion indicate a consciousness of guilt].)

9

And while we acknowledge that Gomez said he had no intent to mislead and lacked knowledge of his office's overtime procedures, other evidence suggests otherwise. To start, his office highlighted these procedures and posted them on the bulletin board next to overtime sign-up sheets until around April 2016—well after Gomez started in the East LA office. Moreover, Gomez's submission of inaccurate paperwork, together with his initial response to investigators, could suggest that he knew his conduct was improper and sought to evade discovery. Gomez even indicated he had in fact read the overtime language, stating that he acted "based on that, seeing that [standard operating procedure] that was established in East LA prior to my arrival"—though he ultimately said he could not recall reading it.

On this record, the Board could conclude that Gomez knew about the standard operating procedure directing officers to "remain available to Caltrans by standing by at the office" and yet still went home early on four instances while claiming full overtime. (See *Holmberg v. Marsden* (1952) 39 Cal.2d 592, 596 [courts must make "all reasonable inferences" in favor of a decision challenged based on the sufficiency of the evidence].) More importantly, the Board could conclude that Gomez intentionally misrepresented material facts to obtain pay for hours not worked and so acted dishonestly within the meaning of Government Code section 19572, subdivision (f). (See *Wilson v. State Personnel Bd.* (1976) 58 Cal.App.3d 865, 875 [the Board could find dishonest an employee who "listed time spent on personal business as overtime"]; *Catricala v. State Personnel Bd.* (1974) 43 Cal.App.3d 642, 648-649 [the Board could find dishonest an employee who attended a card game while claiming to be sick, even though the employee maintained that he was in fact sick]; see also *Gee v. California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 718-719 [" 'Dishonesty' connotes a disposition to deceive"].)

Seeking a contrary conclusion, Gomez raises several arguments. He first asserts that he only learned of the applicable language in the standard operating procedure after CHP began investigating this matter. He also argues that he frequently failed to document when he returned his patrol car for MAZEEP details, without being penalized, and so the Board should not have read anything into this. But the Board disagreed. It concluded that Gomez knew of this standard operating procedure, intentionally claimed overtime in violation of this procedure, and intentionally omitted the time he returned his patrol car. As covered, we find the evidence sufficient to support the Board's findings. Gomez may have presented substantial evidence of his own that he did not act dishonestly, did not know the procedure requiring him to stand by at the office, and did not intentionally omit the time he returned his patrol car. But it is not our role to reweigh the evidence. And performing our limited role here, we are satisfied that substantial evidence supports the Board's finding of dishonesty, even if the Board reasonably could have found otherwise.

Attempting to bolster his claim of ignorance, Gomez asserts that two lieutenants from the East LA office also testified that they were unaware of this standard operating procedure. But he never cites their actual testimony, citing instead only the ALJ's decision discussing their testimony—which is not in itself evidence. (See *Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379 ["Factual assertions on appeal cannot rest solely on citations to the decision of the trial court. It is the evidence supporting or opposing the trial court's decision that is important"].) Gomez also leaves out that the ALJ found neither witness credible, said both gave "implausible" testimony, and said both "became defensive" when asked if they knew about this procedure when at the East LA office. Because Gomez does not challenge these findings, which the Board adopted—nor even provides the relevant record citations—we will not second-guess the ALJ's credibility findings for these two witnesses.

Gomez further suggests that even if he knew of the policy, he still reasonably believed his time at home qualified as time worked, since he "would monitor his cell phone for the rest of the originally scheduled shift in case the Cal-Trans crew needed to call him back." He adds that he only lived 10 minutes from the office and that, according to a CHP captain who joined the East LA office after his dismissal, an officer needed only to be "nearby" the office and available to satisfy the procedure. But Gomez leaves out an important piece of this captain's testimony. He first said that a uniformed officer could leave in his patrol car to grab coffee or food nearby and still satisfy the procedure. But he then added, in terms that appeared to describe Gomez's situation, that "somebody at home undressed completely and taking their personal car home does not qualify as being available." According to his testimony, then, it is one thing to be near the office grabbing coffee, in uniform, and with a patrol car—which would be fine—and quite another to be at home, out of uniform, and without a patrol car—which would not be fine. The CHP captain heading the East LA office during part of Gomez's tenure, moreover, explained that officers who went home early after a MAZEEP detail, but claimed full overtime, would be violating the office's overtime procedures.

Gomez also challenges the validity of his office's procedure requiring him to stand by at the office when Caltrans ends a detail early. He suggests this procedure was improper because he "was never required to sign off that he had read it," "[e]ven though CHP requires officers to sign off as having read every policy that is properly issued . . . ." He further suggests the procedure was improper because it "was never vetted or approved by Command staff as is required for new policies." But Gomez cites nothing in the record to support this argument, neither showing, for example, that CHP requires officers to sign off on each policy, nor citing anything showing command staff must vet or approve new policies. We treat his unsupported argument as forfeited. (See *People v. Hoyt* (2020) 8 Cal.5th 892, 939 ["by failing to support his appellate arguments with record citations, defendant has forfeited any claim of error on appeal"].)

12

Next, Gomez contends he acted consistent with his office's practices.  He alludes to one officer's statement that 80 percent of MAZEEP details at one location ended early and that officers serving these details still claimed overtime for the full period.  But none of that helps Gomez.  The Board did not find him dishonest because he claimed full overtime for details that ended early.  It instead found him dishonest because he claimed full overtime even when he went home after those details ended early, rather than, as office procedure required, "remain available to Caltrans by standing by at the office."  Relatedly, and more to the point, Gomez further notes that other officers also violated this procedure.  That is true.  As Gomez notes, CHP concedes that "[d]ozens" of officers were fired for this practice.  Even so, the Board could find that widespread dishonesty is still dishonesty.  (Cf. *U.S. v. Cervantes-Perez* (D.Minn. 2012) 2012 U.S.Dist.LEXIS 113028, p. *12 [it is no excuse for driving above the speed limit that others were speeding too].)

Lastly, Gomez argues that the Board improperly found his conduct "clearly wrong."  He suggests that to sustain a finding of dishonesty that warrants discipline, Board policy generally requires proof that the employee knowingly violated a rule, unless the conduct was "clearly wrong."  He then argues that here, the Board improperly found his conduct clearly wrong and so erred in finding it unnecessary to have proof that he knowingly violated a rule.  Gomez, however, misreads the record for several reasons.  First, the Board *did* find that Gomez knowingly violated a rule.  In particular, it found he knew his office's procedures required officers to stand by at the office and he "intentionally violated those provisions."  Even in Gomez's view, that would be enough to warrant discipline regardless of whether his conduct was clearly wrong.  Second, although the Board mentioned a "clearly wrong" standard, it only did so when discussing inexcusable neglect of duty—which is a distinct ground for discipline that Gomez does not even mention on appeal.  (Gov. Code, 19572, subd. (d).)  Finally, while the Board found a different employee's conduct was clearly wrong, it never said the same of Gomez, as far as we can find.  And Gomez, for his part, cites nothing to show otherwise.

So we find his argument both misguided and forfeited for failure to provide supportive record citations. (See *People v. Hoyt*, *supra*, 8 Cal.5th at p. 939 [finding forfeited a point asserted without supportive record citations].)[3]

## II

### *Dismissal*

Turning to the imposed penalty, CHP asserts that the Board did not abuse its discretion in finding that Gomez should be dismissed from his position. We agree.

The Board has "broad discretion in respect to the imposition of a penalty or discipline." (*Skelly*, *supra*, 15 Cal.3d at p. 217.) But this discretion is not unlimited. In considering whether the Board abused its discretion in a disciplinary matter, "the overriding consideration . . . is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[harm] to the public service.' " (*Id.* at p. 218.) "Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Ibid.*) One important consideration here concerns Gomez's position as a peace officer. "Case law and [Board] decisions establish that peace officers may be held to higher standards of conduct than civilian employees." (*Cate v. State Personnel*

---

[3] The parties also dispute the weight to be given to the ALJ's credibility finding for Gomez. The ALJ, again, found Gomez not credible. CHP contends we should give this finding great weight. But the trial court found (and Gomez argues) that we should instead give it no weight, stating that the ALJ did not sufficiently describe its reasons for finding Gomez not credible. (See Gov. Code, § 11425.50, subd. (b) ["If the factual basis for the decision includes a determination based substantially on the credibility of a witness, the statement shall identify any specific evidence of the observed demeanor, manner, or attitude of the witness that supports the determination, and on judicial review the court shall give great weight to the determination to the extent the determination identifies the observed demeanor, manner, or attitude of the witness that supports it"].) We need not, however, resolve the parties' dispute on credibility, for we find the evidence sufficient to support the Board's finding regardless.

*Bd.* (2012) 204 Cal.App.4th 270, 285.) They show too that "dishonesty by law enforcement personnel is treated harshly." (*Ibid.*)

Here, we cannot say that the Board abused its discretion in finding that Gomez should be dismissed. As covered, substantial evidence in the record supports the Board's finding that Gomez acted dishonestly in seeking overtime pay for time he spent at home, even though he knew his office's procedures prohibited him from doing so. Substantial evidence also supports the Board's finding that Gomez engaged in this conduct multiple times. That conduct could be found, as it was, to have "resulted in, or if repeated . . . likely to result in, '[harm] to the public service.' " (*Skelly*, *supra*, 15 Cal.3d at p. 218.)

Dismissal for this conduct, to be sure, is a severe penalty. But officers, like Gomez, are expected to demonstrate honesty in carrying out their duties, with courts calling honesty and credibility " 'crucial to the proper performance of an officer's duties' " (*Kolender v. San Diego County Civil Service Com.* (2005) 132 Cal.App.4th 716, 721) and "the essence of" an officer's function (*Ackerman v. State Personnel Bd.* (1983) 145 Cal.App.3d 395, 400). And again, as courts have also explained, "dishonesty by law enforcement personnel is treated harshly." (*Cate v. State Personnel Bd.*, *supra*, 204 Cal.App.4th at p. 285.) So while we find dismissal to be a severe disciplinary action— the most severe in fact—we cannot say the Board abused its discretion under these circumstances.

In holding otherwise, the trial court noted that it found the evidence insufficient to establish dishonesty—a finding, again, that we reject. The court also mentioned four other considerations. First, the court noted that Gomez claimed overtime for time spent at home only on four occasions. Second, the court found the office's overtime procedure, as enforced, ambiguous. It reasoned that according to a CHP captain at the East LA office, officers do not need to stand by at the office when Caltrans ends a detail earlier; they could also stand by "nearby" the office. Third, the court said that CHP division chiefs failed to review overtime procedures with their command at frequent intervals, as

15

CHP's manual requires, and it suggested that the division chiefs could have acted sooner and preempted Gomez's conduct had they done so. Fourth, the court noted that CHP had not imposed progressive discipline. Gomez mentions these same considerations on appeal and adds that he did not continue to engage in the challenged conduct after the investigation. He then contends the Board's decision must therefore be set aside.

But we are not moved to find the same. To start, we give limited weight to the trial court's second reason. Again, it is true a CHP captain who joined the East LA office after Gomez's dismissal said that officers could stand by both at the office and nearby. But he explained that this flexibility was limited. It allowed, he said, room for officers to grab coffee or food nearby while in uniform and with their patrol car. But it did not, he emphasized, allow officers to be at home, out of uniform, and without their patrol car. A CHP captain during part of Gomez's tenure said something similar: Officers could not return home when a MAZEEP detail ended early and still claim full overtime. So while we accept that CHP's enforcement practice allowed some room for officers to step outside the office, we cannot say that its practice was so ambiguous as to permit the conduct here.

Still, we acknowledge that the trial court's remaining points are not unreasonable ones. We do not disagree that the Board could have cited these very considerations and then decided to impose some other discipline short of dismissal. But the Board made a different decision. And while we accept that reasonable minds could have exercised their discretion differently here, we cannot say that the Board abused its discretion after taking into account the facts of this case, its finding of dishonesty, and the importance of honesty in law enforcement officers. Put another way, we cannot say that the Board acted " 'arbitrarily, capricious[ly], or beyond the bounds of reason,' " and so we will not disturb its decision. (*Fisher v. State Personnel Board* (2018) 25 Cal.App.5th 1, 21; see *County of Los Angeles v. Civil Service Com. of County of Los Angeles* (2019) 40

16

Cal.App.5th 871, 877 ["Only in an exceptional case will an abuse of discretion be shown because reasonable minds cannot differ on the appropriate penalty"].)

DISPOSITION

The judgment is reversed.  CHP is entitled to recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

/s/
BOULWARE EURIE, Acting P. J.

We concur:

/s/
MESIWALA, J.

/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.